## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LESLIE BROWN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-CV-526-JED-FHM |
| | ) | |
| ANGELA BRADLEY, KEVIN COX, | ) | |
| JACK HENDERSON, G.T. BYNUM, | ) | |
| DENNIS SEMLER, CITY OF TULSA, | ) | |
| DAVID PATRICK, BLAKE EWING, | ) | |
| KAREN GILBERT, and PHIL LAKIN, JR., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

The Court has for its consideration various motions to dismiss Plaintiff Leslie Brown, Jr.'s

Amended Complaint (Doc. 51). The motions under consideration are those of Defendants Kevin

Cox (Doc. 53), Jack Henderson (Doc. 54), Dennis Semler (Doc. 55), City of Tulsa (Doc. 75),

Karen Gilbert (Doc. 76), Blake Ewing (Doc. 79), and Phil Lakin, Jr. (Doc. 82). For reasons

explained further below, the Court also considers Plaintiff's claims against Defendants G.T.

Bynum and Angela Bradley.

## I.    BACKGROUND

This civil rights action stems from the abatement of a public nuisance at the Tulsa

residence of Plaintiff Leslie Brown, Jr. Unless otherwise noted, the following account reflects the

facts as alleged by Mr. Brown in his Amended Complaint (Doc. 51).[1]

---

[1]    Mr. Brown's Amended Complaint references four documents, which he also attaches as
exhibits. (*See* Doc. 51 at 17–21). The first is a letter sent to Mr. Brown by Defendant Kevin
Cox, an inspection supervisor for the City of Tulsa, in response to Mr. Brown's request to have
the City's abatement charges overturned. The second is a request by Mr. Brown to speak before
the City Council during the public comment period at a regularly scheduled meeting. The third
is a letter from the secretary of the City Council telling Brown that his request had been denied.
The fourth is a tax bill associated with the property. Mr. Brown does not dispute any of the

In the late summer of 2015, Mr. Brown was living in a house on Tulsa's north side. The home was owned by a couple in Georgia. (Doc. 51 at 17–18). At the time, the residence was already under a formal Notice to Abate, which the City issued in connection with various nuisance conditions on the property. (*Id.* at 17). The notice gave the City authority under its ordinance to summarily abate any further nuisances found on the property within the following two years.[2] On July 13, 2015, an inspection again found uncut grass and debris accumulation. (*Id.*). A summary notice regarding the latest nuisance was posted to the property the same day. On August 24, the City issued a work order hiring a contractor to abate the property. (*Id.*). On September 18, the crew, accompanied by a City employee named Angela Bradley, went to the property to conduct the cleanup. (*Id.*).

When they arrived, Mr. Brown was in the process of having his grass cut by a hired hand. (Doc. 51 at 5). Rather than let Mr. Brown and his worker finish the job, Ms. Bradley ordered them to stop so the City's contractor could clean up the property instead. (Doc. 51 at 5). A confrontation must have ensued because Tulsa Police officers eventually arrived at the scene and ordered Mr. Brown to stand down lest he be arrested. (Doc. 51 at 7). After the workers finished cutting the grass and hauling away debris, the City placed a lien on the property for the abatement costs, about $600. (Doc. 51 at 12).

Mr. Brown protested the abatement, prompting Defendant Kevin Cox, an inspection supervisor with the City, to respond in a March 7, 2016 letter. In it, he refused to overturn the

---

information presented in the documents. Accordingly, the Court construes the documents as being part of Mr. Brown's Amended Complaint. *See* Fed. R. Civ. P. 10(c).

[2]     *See* Tulsa, Okla., Code tit. 24 § 210.

abatement charges, citing the notice Mr. Brown had been given and before-and-after photos of the property. (Doc. 51 at 17–18).

Unsatisfied with Mr. Cox's response, Mr. Brown lodged an appeal with the City Council and was given a hearing date of May 12, 2016. On the day he was to appear, however, he arrived late, after the meeting had adjourned. (Doc. 51 at 19). Having missed the opportunity for a formal hearing, he submitted a request to speak to the City Council during the public comment period of a regularly scheduled meeting but was refused. (*Id.*). According to the letter transmitting the refusal, Mr. Brown's request was denied "per Council rule and decision of the Council Chair." (*Id.* at 20).

Although Mr. Brown does not dispute that his yard violated the nuisance ordinance, he claims that Ms. Bradley, who is white, singled him out for enforcement of the nuisance ordinance because he is black. (Doc. 51 at 5). Mr. Brown further alleges that Mr. Cox rubber stamped Ms. Bradley's decision and that both of them were acting as part of a racist conspiracy, led by the City, to "wrongfully take and deprive from African-American owners their real property." (*Id.* at 12). According to Mr. Brown, Ms. Bradley's and Mr. Cox's role in the conspiracy was to "encumber property owned and controlled by African Americans within the City of Tulsa with tax assessments for unpaid charges for maintenance of said alleged derelict properties." (*Id.* at 11).

Mr. Brown claims this conduct violated a variety of his constitutional rights and seeks damages from Ms. Bradley, Mr. Cox, the City of Tulsa, and several members of the City Council (referred to collectively hereinafter as "the City Defendants"). Additionally, Mr. Brown seeks an injunction against the City that would prevent "any improper harassment, retaliation, and unwarranted actions by said individuals against Plaintiff as retaliation for the prosecution of this

action." (Doc. 51 at 14–15). Finally, Mr. Brown asks the Court to enjoin Defendant Dennis Semler, the County treasurer, from selling Mr. Brown's residence in satisfaction of the abatement lien.

## II.    PROCEDURAL ISSUES

Earlier litigation in this case leaves the action in something of an awkward procedural posture. Initially, Mr. Brown brought his claims against a slightly different roster of defendants. (*See* Doc. 1). In his first complaint, Mr. Bynum and Mr. Henderson were the only individual City Councilors named as defendants, and the City Council was named as a party in its own right. (*See* Doc. 1). In response, the City Council moved for dismissal on the grounds that it was not a distinct legal identity capable of being sued. (*See* Doc. 7). Rather than contest the point, Mr. Brown dropped his claims against the City Council and moved to join the City and several of the other Council members. (*See* Doc. 16; Doc. 27). The Court granted him leave to do so, and Brown filed the present, Amended Complaint. (*See* Doc. 46; Doc. 51). This led to two complications.

First, three dismissal motions—filed by Defendants Cox, Semler, and Henderson—were still pending when Mr. Brown filed the Amended Complaint. (*See* Doc. 14; Doc. 35; Doc. 37). Because an amended complaint supersedes the original, *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991), Mr. Brown's filing arguably pushed the reset button on the dismissal stage of the ligation. Operating on the assumption that their prior motions were moot, they filed a new round of dismissal motions aimed at the Amended Complaint. (*See* Doc. 53; Doc. 54; Doc. 55). Mr. Brown, though he had responded to all three of their prior motions, renewed his objections only as to the motion filed by Mr. Cox. (*See* Doc. 57). Consequently, the motions of Mr. Henderson and Mr. Semler stand before the Court—technically at least—unopposed.

Second, the Amended Complaint restated Mr. Brown's claims against Ms. Bradley and Mr. Bynum, even though the Court had previously dismissed his claims against them due to Mr. Brown's failure to respond to their dismissal motions. (*See* Doc. 11; Doc. 12; Doc. 29). Although

somewhat unusual, this was not strictly prohibited because the claims were dismissed without prejudice. Mr. Bynum and Ms. Bradley, assuming perhaps that Mr. Brown could not revive his claims against them, never moved to dismiss the Amended Complaint. As a result, the claims against them now stand before the Court unopposed.

Although Mr. Henderson's and Mr. Semler's motions should arguably be deemed confessed due to Mr. Brown's failure to respond, this would privilege form over substance. While it is true that Mr. Brown has not responded to Mr. Henderson's and Mr. Semler's current motions, doing so was something of a formality. Mr. Brown's Amended Complaint joined new defendants, but his claims against the preexisting defendants remained the same. Accordingly, Mr. Henderson and Mr. Semler's arguments in favor of dismissal hardly changed from one motion to the next. Under these circumstances, Mr. Brown could have refiled his previous briefs essentially unchanged. Rather than dismiss his claims for a picayune procedural failure, the Court will construe Mr. Brown's prior responses to Mr. Henderson's and Mr. Semler's motions as being responsive to the motions currently before the Court.

A similar logic applies to Mr. Bynum's and Ms. Bradley's dismissal motions. Wright & Miller's *Federal Practice and Procedure* argues that defendants should not be made to refile a pending motion if its arguments remain applicable to the new complaint. *See* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 Westlaw (3d ed.). "If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." *Id*. Moreover, even if Mr. Bynum's and Ms. Bradley's prior motions are not operative in the formal sense, the Court has the independent authority to test the viability of Mr. Brown's claims. Where, as here, a plaintiff proceeds in *forma pauperis*, the Court may determine sua sponte whether he has stated a claim on

which relief can be granted. *See* 28 U.S.C. § 1915(e)(2). Accordingly, the Court will consider the arguments raised in Mr. Bynum's and Ms. Bradley's motions.

## III.   STANDING

The City Defendants and Mr. Semler argue that Mr. Brown lacks constitutional standing to bring his claims. Because standing implicates the Court's authority to hear this matter, the issue must be resolved before addressing the merits of Mr. Brown's claims.[3]

The "irreducible constitutional minimum of standing" has three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an "injury in fact." *Id*. Second, a causal connection must link the injury to the offending conduct of the defendant. *Id*. That is, the injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (alterations omitted) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)). Third, it must be "likely," rather than merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* at 561. At the pleading stage, the plaintiff bears the burden of alleging facts that demonstrate each of the required elements. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). In assessing whether a plaintiff has standing, courts are not to delve into the merits of the plaintiff's claim. *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006). Practically speaking, courts must assume the plaintiff will prevail on the merits of his claim. *Day v. Bond*, 500 F.3d 1127, 1137 (10th Cir. 2007).

In Mr. Brown's case, the defendants dispute whether he has alleged a cognizable injury in fact. (*See, e.g.*, Doc. 54 at 4–6). To establish an injury in fact, a plaintiff's allegations must show

---

[3]   Although the City Defendants generally style their motions as being brought under Rule 12(b)(6), standing is a component of the Court's subject matter jurisdiction. Accordingly, a motion to dismiss for lack of standing is more properly brought under Rule 12(b)(1).

"an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent" rather than "conjectural or hypothetical." *Spokeo,* 136 S. Ct. at 1548. An injury is "concrete" when it is real rather than purely "abstract." *Id.*  It is particularized when it "affect[s] the plaintiff in a personal and individual way." *Id.*

The defendants argue that Mr. Brown has suffered no injury because the abatement charges were assessed as a lien on the property, which Mr. Brown rents rather than owns. Consequently, the defendants say, even if his claims are true and the City defendants acted wrongfully, the resulting harm accrued not to Mr. Brown but to his landlords.

Brown points out that, under the terms of his lease, he was "responsible for the upkeep of said premises during his occupancy of the [property], including maintenance and cutting of all grass, trees, and shrubbery on said property, and costs in relation thereto."[4] (Doc. 43 at 15). Thus, Mr. Brown claims, he is the person who will ultimately have to pay the abatement charges if they are allowed to stand. (Doc. 43 at 4).  Given his liability under the lease, he argues, he ought to be able to contest the charges.

Mr. Brown also points to the notice underpinning the City's abatement action. According to the notice, a copy of which he attaches to one of his response briefs, the City served the citation to him personally in addition to mailing a copy to his landlords in Georgia. (Doc. 57 at 5, 16–17). Although his argument is not entirely clear, the upshot seems to be that the City's own notice recognized him as a party to the abatement action, despite his status as a tenant.[5]

---

[4]    Brown also argues that tenants generally have standing to challenge tax assessments on the property they rent, but he cites no relevant authority for that proposition. *See* (Doc. 24 at 2, 10–12).

[5]    Mr. Brown raises his lease obligations and the contents of the nuisance citation for the first time in his response briefs. As these allegations are consistent with the facts and theories he has already raised, the Court will construe the new allegations as amendments to his complaint. *See Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001).

The parties address their arguments to Mr. Brown's claims generally, but standing depends on the nature of the rights a plaintiff seeks to vindicate, which may vary according to the claim. Standing cannot be established in gross. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). The requirements of standing must be met "for each claim" and "for each form of relief" sought by the plaintiff. *Id.* The Court proceeds accordingly.

A.      **Injury in Fact**

1.      **Count One: Substantive Due Process**

In Count One, Mr. Brown claims that he had a substantive due process right to abate the nuisance in his yard and that Ms. Bradley and the Tulsa Police Department violated that right when, by threat of arrest, they prevented him from doing so. (Doc. 51 at 7–8).

Mr. Brown has alleged an injury in fact. Setting aside the issue of whether Mr. Brown had the constitutional right he asserts—a merits question distinct from the standing inquiry—the conduct alleged, taken as true, would satisfy the requirement of harm to a legally protected interest. As a lessee of the property, Mr. Brown had a possessory interest in the land, and that interest entailed both the right and, under the terms of his lease, the responsibility to maintain the lawn. An alleged injury to that interest by physical invasion of the property he was leasing would be "concrete." Such alleged injury would also be "personal" because the right to possess the land was Mr. Brown's to enjoy. Finally, the injury averred by Mr. Brown would be "actual," as it arguably occurred the moment Ms. Bradley and the police prevented Mr. Brown from mowing his lawn.

The argument offered by Ms. Bradley and the City—that Mr. Brown lacks standing because he does not own the property—is inapplicable to this claim. Although the abatement lien is a burden on the ownership interests of Mr. Brown's landlords, the alleged conduct of Ms. Bradley and the Tulsa Police Department, if proved, would be an independent infringement on Mr.

Brown's possessory interests. This is sufficient at the pleading stage to demonstrate an injury in fact.

### 2.     Count Two: Procedural Due Process

In Count Two, Mr. Brown claims that the individual City Council members violated his right to due process by denying him an opportunity to appeal the charges associated with the City's abatement action. (Doc. 51 at 8). Again, Mr. Brown has sufficiently alleged an injury in fact.

Mr. Brown has alleged a concrete interest in the outcome of his appeal to the City Council. Under the City's nuisance ordinance, both Brown and his landlords were jointly liable to the City for the abatement costs.[6] Although the City, by way of the lien, was secured only as against the owners, the City remained free to pursue Brown for the fees. While Mr. Brown has not alleged that either the City or his landlords have demanded payment from him, the denial of due process is a harm unto itself, even when it results in no economic injury. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978). Were Brown to succeed on the merits of his claim, he would not be able to recover abatement costs, but he would be entitled to nominal damages in recognition "of the importance to organized society that procedural due process be observed." *Id.*

---

[6]     Under the ordinance, notice of a nuisance to be abated must be served both on the owner of the property and on "the person or entity who maintains, operates or permits [the] nuisance." Tulsa, Okla., Code tit. 24 § 201(A), (B). The ordinance further provides that "[a]ny person or entity who fails to abate any nuisance after proper notice shall be liable to the City for all expenses incurred in the abatement of the nuisance. The City may pursue its right of action to recover all such costs following any and all reasonable legal methods . . . ." *Id.* § 209(A). "To recover the costs incurred in abating any type of nuisance, the City may impose a lien on the subject property to secure payment of such costs." *Id.* Mr. Brown alleges that the City considered him responsible for the nuisance and served him with a notice to abate it. Because Mr. Brown permitted a nuisance on a property under his control and was served notice instructing him to abate, he was independently liable to the City, whether or not he owned the property.

### 3. Counts Three and Four: Equal Protection and Conspiracy.

In Count Three, Mr. Brown claims that the City, through Ms. Bradley and Mr. Cox, denied him equal protection under the law by selectively enforcing the nuisance ordinance against him because he is black. (Doc. 51 at 9). In Count Four, Mr. Brown claims that Bradley and Cox undertook the above as part of a conspiracy with the City and members of the Council to divest him and other black residents of their property rights. (Doc. 51 at 11).

Mr. Brown need add nothing to these allegations in order to allege a cognizable injury. Discrimination itself is an injury to those who have been personally discriminated against. *Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984).

### 4. Injunctive Relief Against the City

In connection with Counts One through Four, Mr. Brown seeks to enjoin the City and its agents from engaging in "any improper harassment, retaliation, and unwarranted actions by said individuals against Plaintiff as retaliation for the prosecution of this action." (Doc. 51 at 14–15).

Mr. Brown lacks standing to seek the requested relief. To seek prospective relief, a plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future. *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). In doing so, a plaintiff is bound by the pleading standards established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010) ("[W]e apply the same standards under 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action."). Here, Mr. Brown alleges only that "city attorneys and other members of the Code Enforcement Office have already began [sic] and initiated covert retaliatory actions against Plaintiff as a result of the filing of this action and said actions are unwarranted and unjustified under the law." (Doc. 51 at 15). Such a vague allegation will not support a determination that injury is imminent.

10

### 5. Injunctive Relief Against Defendant Semler

In addition to his claims against the City Defendants, Mr. Brown seeks an injunction against Tulsa County Treasurer Dennis Semler that would prevent Mr. Semler from selling the property that Mr. Brown rents for unpaid taxes.[7] (Doc. 51 at 13).

Again, Mr. Brown lacks standing because he fails to allege an imminent injury. According to Mr. Brown, Mr. Semler "is scheduled at some time in the near future to place for sale at a county action [sic] the real property which is the subject matter of this action." (*Id.*). An allegation that Mr. Semler will sell the property "in the near future" is not sufficient. *See Tandy*, 380 F.3d at 1283.

### B. Causation and Redressability

Having determined that the allegations made in Counts One through Four show an injury in fact, the Court further finds that Mr. Brown's allegations satisfy the requirements of causation and redressability with respect to these counts. The injuries alleged in each claim are fairly traceable to the relevant defendants, and the Court can identify no impediments to redress. The Court need not address the issues of causation and redressability with respect to Mr. Brown's requests for injunctive relief, as he has failed allege an injury in fact.

## IV.    SERVICE OF PROCESS

In addition to arguing that Mr. Brown lacks standing, the City of Tulsa and Defendants Gilbert, Ewing, and Lakin move to dismiss on the grounds that Mr. Brown failed to effect timely service of process as required by Federal Rule of Civil Procedure 4(m). (*See* Doc. 75 at 3–4; Doc. 76 at 4; Doc. 79 at 4; Doc. 82 at 4). Rule 4(m) provides as follows:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a

---

[7]    Mr. Brown styles his claim against Mr. Semler as "Count VI," (Doc. 51 at 13), but it is the fifth of five enumerated counts in the Amended Complaint.

specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

The defendants seeking dismissal under Rule 4(m) were joined in this action by way of the Amended Complaint, which was filed on June 11, 2018. Accordingly, Mr. Brown was required to serve them no later than September 10, 2018. He failed to do so.

After the default deadline came and went with no indication that the defendants had been served, the Court entered a minute order on November 14, 2018 giving Mr. Brown 14 days to show that proper service had been made on every defendant. (Doc. 60). Failure to do so, the Court warned, would result in the dismissal of all claims against unserved defendants. Again, Mr. Brown failed to meet the required deadline.[8]

Although Mr. Brown has yet to explain his failure to meet the required deadlines, his lack of diligence has not resulted in any identifiable prejudice to the complaining defendants. All of the City Defendants, including those seeking dismissal under Rule 4(m), share the same counsel, and at least some of the City Defendants joined in the original complaint received timely service. All the City Defendants, therefore, had timely notice of Mr. Brown's claims. Under these circumstances, dismissal for lack of timely service is not warranted.

## V.    FAILURE TO STATE A CLAIM

Finally, the City Defendants argue that Mr. Brown's allegations are legally insufficient to state a claim. The Federal Rules of Civil Procedure require a plaintiff to include in his complaint "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

---

[8]    The City was served on December 20, 2018, more than three months after Rule 4's default deadline and more than three weeks after the extended deadline set by the Court. (Doc. 69). Service on the others occurred even later: Ms. Gilbert was not served until December 21st (Doc. 71); Mr. Ewing until January 2, 2019 (Doc. 72); and Mr. Lakin until January 9, 2019 (Doc. 77).

Civ. P. 8(a)(2). The defendants argue that he has failed to meet this burden and move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Court's function on a Rule 12(b)(6) motion is not to weigh the evidence that the parties might present at trial, but to assess whether the plaintiff's complaint is legally sufficient to state a claim upon which relief may be granted. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014). A complaint is legally sufficient only if it contains factual allegations such that it states a claim to relief that "is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where the well-pleaded facts permit the court to infer merely the possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief. *Id.* at 679.

In assessing a claim's plausibility, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Brokers' Choice*, 757 F.3d at 1136. The Court is not bound to accept an allegation as true when it amounts to no more than a legal conclusion masquerading as fact. *Iqbal*, 556 U.S. at 678.

The Court is mindful that Mr. Brown proceeds pro se. While pro se pleadings must be liberally construed and held to less stringent standards than pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a district court should not assume the role of advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Moreover, even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil and Appellate Procedure" and substantive law, and the liberal construction

to be afforded does not transform "vague and conclusory arguments" into valid claims for relief. *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

With this standard in mind, the Court turns to Mr. Brown's various claims.

### A.    Count One: Substantive Due Process

In Count One of his Amended Complaint, Mr. Brown alleges that Ms. Bradley and the Tulsa Police Department violated his substantive due process rights by preventing him from cleaning up his yard on his own. According to Mr. Brown, he had "both a common law and constitutional right to abate any alleged nuisance contended by the defendants." (Doc. 51 at 7).

Although the complaint does not specify which defendants are subject to which claims, the Court construes Count One as a claim against the City of Tulsa, Mr. Cox, and Ms. Bradley. Only Ms. Bradley is mentioned by name in Count One, but the Amended Complaint generally alleges that the City had "a long standing unwritten policy" of discrimination against black residents and describes both Mr. Cox and Ms. Bradley as agents deployed to carry out the scheme.

Invasion of a federally protected right is the sine qua non of a claim under 42 U.S.C. § 1983. *See Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002). According to Mr. Brown, the Due Process Clause of the Fourteenth Amendment protected his right to "continu[e] to abate" the nuisance conditions in his yard without City interference. (Doc. 51 at 7). The Court can find no authority to support this contention.

The exercise of executive power may violate substantive due process if it represents an arbitrary and oppressive exercise of government power. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The Tenth Circuit has recognized "two strands" of the substantive due process doctrine. *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008). One strand protects an individual's fundamental liberty interests, while the other protects against the exercise of government power as an instrument of oppression. *Id.*

14

Mr. Brown's claim finds no support under the first strand. A right may be said to be fundamental only if it is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Id*. (quoting *Chavez v. Martinez,* 538 U.S. 760, 775 (2003)). Here, Mr. Brown's complaint alleges that he was cited for a nuisance violation, that he had yet to abate the nuisance by the time the City had engaged a contractor to do so on his behalf, and that the City refused to call off the contractor so Mr. Brown could abate the property on his own. Mr. Brown points to no authority supporting the proposition that a resident's right to abate a public nuisance at the time of one's own choosing is "deeply rooted in this Nation's history and tradition."

Mr. Brown's claim finds no more support under the second strand of the substantive due process doctrine. When government conduct does not touch on a fundamental right, a cognizable due process claim exists only where the conduct is so egregious that it "shocks the conscience." *Seegmiller*, 528 F.3d at 767. "Conduct that shocks the judicial conscience . . . is deliberate government action that is 'arbitrary' and 'unrestrained by the established principles of private right and distributive justice.'" *Id.* (quoting *Lewis,* 523 U.S. at 846). Based on the well pleaded facts in this case, Ms. Bradley cannot be said to have acted arbitrarily. Mr. Brown's own allegations concede the fact that he was cited for a nuisance and that he failed to address the issue before the City moved to address it for him. Because the deadline for addressing the issue had passed, and because the City had already incurred the expense of deploying its contractor, Ms. Bradley's decision to follow through with the City-funded abatement action cannot be said to shock the conscience.

On a more basic level, Mr. Brown's appeal to the Due Process Clause must fail because his allegations implicate the Fourth Amendment right against unreasonable seizures. Where a particular Amendment provides an explicit textual source of constitutional protection against a

particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing the plaintiff's claim. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). And the Tenth Circuit has already determined that abatement of a nuisance does not violate the Fourth Amendment when procedural due process standards are met. *Santana v. City of Tulsa*, 359 F.3d 1241, 1245 (10th Cir. 2004). Here, Mr. Brown has not alleged that the City failed to provide adequate notice before hiring a contractor to abate the nuisance on his property or that the City did not give him adequate time to abate the property on his own. Moreover, as explained further below, he was given an opportunity to contest the abatement charges but failed to do so. Under the circumstances, his allegations show no Fourth Amendment violation. *See id.* at 1244.

Because the well-pleaded facts, even when taken as true, do not identify asubstantive due process violation (or any other constitutional violation), Count One fails to state a cognizable claim against either Ms. Bradley or Mr. Cox. Moreover, because an underlying constitutional violation is a prerequisite to municipal liability, Count One fails to state a cognizable claim against the City of Tulsa. *Trigalet v. City of Tulsa, Oklahoma*, 239 F.3d 1150, 1154 (10th Cir. 2001).

## B.    Count Two: Procedural Due Process

In Count Two of his complaint, Mr. Brown alleges that the City Council defendants violated his due process rights when they did not allow him a hearing to appeal the nuisance abatement charges. (Doc. 51 at 8). Defendants Henderson, Bynum, Patrick, Ewing, Gilbert, and Lakin are sued in their individual capacities.

Specifically, Mr. Brown alleges that he made a written request "to be allowed a hearing in accordance with the Council's rules and procedures, however said Council members, including defendant Henderson and Bynum acted in an arbitrary and capricious manner in not allowing

Plaintiff a hearing." (*Id.*). These allegations fall short of stating a plausible claim for denial of procedural due process.

As a preliminary matter, Mr. Brown describes the City Council's alleged misconduct in purely conclusory terms and attributes the denial of his request to the Council generally rather than to specific actions taken by particular Council members. When a plaintiff brings claims against several government actors in their individual capacities, it is essential "that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). "It is axiomatic that, to prevail on a damages claim for a constitutional violation pursuant to § 1983, the plaintiff must show that the defendant[s], acting under color of state law, '*personally participated* in the alleged violation.'" *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007) (emphasis added). "Conclusory allegations are not sufficient to state a constitutional violation." *Id.*

Here, Mr. Brown alleges that that the Council members "conspired" to deny him a hearing, but his complaint is silent as to the actions they undertook to block his requested hearing. Did they vote against allowing it? Did they work behind the scenes to prevent him from appearing on the agenda? The Court can only guess. According to a letter denying his request to speak before the Council, which he attaches to his complaint, his request for a rehearing was "denied per Council rule and decision of the Council Chair." (Doc. 51 at 20). This suggests that only one of the City Council members, the chairperson, had the ultimate decision making authority regarding his request, but Mr. Brown does not identify who was serving as the chairperson at the time. Thus, when the conclusory allegations are stripped away, nothing in the complaint links any individual

17

City Council defendant to the alleged constitutional violation. As a result, his claims against those defendants must fail.

Furthermore, even if Mr. Brown's complaint clearly alleged who denied his request for a hearing, he would still be unable to make out a claim for denial of procedural due process. In order to sustain such a claim, a plaintiff must show (1) that the defendants' actions deprived him of property, *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000); and (2) that the procedures leading to this deprivation were constitutionally insufficient, *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006). Arguably, Mr. Brown's claim fails to clear even the first hurdle. He has not alleged that his landlords actually required him to pay for the abatement charges, and it is unclear whether his contractual obligation to do so qualifies as a deprivation of property within the meaning of the Due Process Clause. The Court need not resolve this issue, however, as Mr. Brown has not alleged facts showing that the City Council defendants failed to provide him with constitutionally adequate procedural protections.

Under the City's nuisance ordinance, the City cannot abate a public nuisance without giving notice to the "person or entity who maintains, operates or permits a nuisance" so the responsible party has an opportunity to address it without City involvement. Tulsa, Okla., Code tit. 24 § 201. The notice must also inform the property owner that, if the nuisance is not eliminated within ten days, the City may abate the property and place a lien against the property for the costs. *Id.* A cited party is entitled to contest the abatement action at a hearing conducted by a designated Hearing Officer (typically the Municipal Court Administrator), provided the party files notice of his appeal within ten days of the notice to abate the nuisance. § 205. The party is further entitled to appeal the Hearing Officer's decision to the City Council, provided the party files notice of the

18

appeal with the City Clerk no later than ten days after the Officer has issued his decision. § 207. Nothing in Mr. Brown's Amended Complaint suggests that the City departed from this procedure, which has been held to pass constitutional muster, *see Santana v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004).

Moreover, Mr. Brown's claim is premised on the Council's alleged failure to provide him a hearing, but it is not clear from his complaint that he was entitled to a City Council hearing in the first place. His complaint does not allege that he filed an initial appeal to the City's Hearing Officer, which is a procedural prerequisite to City Council appeal. Moreover, even if he was entitled to a hearing before the Council, that hearing was provided, according to a copy of his request to be added to the City Council agenda, which he attaches to his complaint and incorporates by reference. According to the request, the City Council held a hearing for Mr. Brown during its May 12, 2016 meeting, but he failed to appear. A week later, without explaining why he was unable to attend the first hearing, he asked the City Council for another opportunity to appeal the abatement action. Thus, to the extent he was denied a hearing, that denial occurred only after he failed to appear at a previously scheduled hearing.

Under these circumstances, the denial of his request for a second City Council hearing does not violate due process. "A party cannot create a due process claim by ignoring established procedures. 'The availability of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure.'" *Santana*, 359 F.3d at 1244 (quoting *Dusanek v. Hannon*, 677 F.2d 538, 542–43 (7th Cir.1982)). Because Mr. Brown's allegations, taken as true, show that he had a constitutionally adequate opportunity to contest the abatement action but failed to do so, he has not stated a claim for a due process violation.

## C.     Count Three: Equal Protection

In Count Three of his Amended Complaint, Mr. Brown claims that Ms. Bradley and Mr. Cox selectively enforced the nuisance ordinance against him because of his race, thereby violating the Equal Protection Clause of the Fourteenth Amendment. Elsewhere in the complaint, but relevant to the claims asserted in Count Three, Mr. Brown alleges that the City of Tulsa has a "long standing unwritten policy" of discriminating against black residents and that Ms. Bradley and Mr. Cox were "carrying out the practice, custom and usage of the City of Tulsa in discriminating against African-Americans in their code enforcement against [Mr. Brown] and other African-Americans residing within said City." (Doc. 51 at 6).

Mr. Brown asserts that Ms. Bradley "purposefully and intentionally discriminates against African-American residents and property owners in her code enforcement activities, and she neglects to enforce the same city ordinances and regulations against Caucasian owners of property within the City which would and should also be declared as nuisances." (Doc. 51 at 9). Mr. Brown claims to have pictures of "numerous other properties either owned by Caucasians and/or owned and controlled by the City of Tulsa" that the City and its enforcement officers, including Ms. Bradley and Mr. Cox, "totally ignore and fail to cite and/or prosecute as alleged nuisances." (*Id.*). Meanwhile, "properties owned and controlled by African Americans are accorded much stricter scrutiny, enforcement, and prosecution by Bradley, Cox, and other code enforcement officers." (*Id.* at 9–10).

Mr. Brown further alleges that, in a private conversation with Mr. Henderson about Mr. Brown's nuisance appeal, Mr. Henderson "virtually told" Brown that "he was wasting his time trying to contest said actions because the City Council members routinely deny all appeals by citizens—particularly blacks." (Doc. 51 at 10). According to Brown, Mr. Henderson went on to say that "there was little and nothing that he could do to assist [Mr. Brown] in relation to his contest

20

of the nuisance actions of the City of Tulsa because they constantly and routinely harass and scrutinize property on the North Side of Tulsa stricter than other portions of the City." (*Id.*).

Given these allegations, the Court construes Count Three as bringing individual-liability claims against Defendants Bradley and Cox, and a municipal-liability claim against the City of Tulsa.

### 1.    Individual-Liability Claims

The Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race." *Whren v. U.S.*, 517 U.S. 806, 813 (1996). To succeed on a claim of selective enforcement, a plaintiff must "demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003).

In order to satisfy the discriminatory-effect element, a plaintiff must allege facts showing that the defendant could have enforced the law against a similarly situated individual of another race but failed to do so. *See Ruff v. Bd. of Regents of Univ. of New Mexico*, No. 16-CV-1140 MCA/LF, 2018 WL 565705 (D.N.M. Jan. 24, 2018) (citing *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006)). In order to satisfy the discriminatory-purpose element, a plaintiff must plead facts showing that discriminatory intent was a "motivating factor in the decision" to enforce the law against the plaintiff. *Alcaraz-Arellano*, 441 F.3d at 1264.

In the event that Mr. Brown's allegations meet these requirements, he faces a third barrier. Ms. Bradley and Mr. Cox argue that they are entitled to qualified immunity. Accordingly, in order to escape dismissal, Mr. Brown must not only plead facts establishing an equal protection violation, his allegations must show that Ms. Bradley and Mr. Cox acted in a manner that violated clearly established law. *See Price-Cornelison v. Brooks*, 524 F.3d 1103, 1109 (10th Cir. 2008)

(applying the qualified immunity analysis to a claim of selective enforcement in violation of the Equal Protection Clause).

### a.       Bradley

Mr. Brown's allegations lack enough factual material to satisfy either element of his equal protection claim against Ms. Bradley. With respect to discriminatory effect, Mr. Brown alleges that Ms. Bradley subjects black residents to "much stricter scrutiny, enforcement and prosecution," (Doc. 51 at 9–10), but this is merely an allegation that she singled out black residents in general. It is not enough that a defendant's conduct had a discriminatory effect on someone; it must have had a discriminatory effect on the plaintiff. Mr. Brown, however, never explains what role, if any, Ms. Bradley had in the decision to cite or abate the nuisance on Mr. Brown's property. Although he alludes to Bradley's "actions" and "code enforcement activities," he never says what those "actions" and "activities" were.[9] (Doc. 51 at 9).

When vague and conclusory allegations are stripped away, Mr. Brown's complaint alleges only that Ms. Bradley carried out the abatement of his property without giving him a chance to clean it up on his own in order to avoid the abatement charges. As stated above, discriminatory effect requires comparison to someone similarly situated. Thus, under these circumstances, Mr. Brown must point to residents of other races whom Ms. Bradley permitted to abate nuisances at

---

[9]      Ms. Bradley claims she had nothing to do with the initial finding that Mr. Brown's yard was a nuisance. (Doc. 12 at 2). In support of this assertion, she includes with her Motion to Dismiss a copy of the Notice to Abate, which was signed by somebody else. (Doc. 12-1 at 2–4). Although a 12(b)(6) motion must ordinarily be converted to a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court," the Court would arguably be justified in considering the notice in this case because Mr. Brown himself relies on the same document. *See Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008). Nevertheless, because Mr. Brown's claims against Ms. Bradley fail for other reasons, the Court disregards her factual claims for the purposes of its 12(b)(6) analysis.

the eleventh hour. Because he makes no such allegations, his complaint fails to satisfy even the first element of an equal protection claim.

Moreover, even if he had alleged facts showing that Ms. Bradley treated black residents differently, his complaint lacks enough factual material to support his claim that she acted with a discriminatory purpose. His allegations that Ms. Bradley targets black residents because of racial bias rests primarily on his "own bona fide personal opinion and belief" and the belief of "other African-Americans within the community who have had dealings with her." (Doc. 51 at 5). These statements are too conclusory to qualify as factual allegations supporting Mr. Brown's claim.

Mr. Henderson's alleged statement presents a closer call. A policy of discrimination against black residents in code enforcement would be enough to satisfy the discriminatory purpose element, as the actions of a code enforcement officer carrying out the policy would be motivated by the "discriminatory purpose" of the policy. Mr. Henderson's alleged statement, however, was not that the City has a policy of targeting black residents, it was that the City "scrutinize[s] property on the North Side of Tulsa stricter than other portions of the City." (Doc. 51 at 10). Although Tulsa's north side has a substantial black population, the existence of a policy targeting a black neighborhood for code enforcement is not the same as a policy targeting black residents in general. Unless there is evidence that the City targets the North Side *because* many of its residents are black, the policy itself has only a discriminatory *effect*. Absent allegations indicating that the *purpose* of the policy is racial discrimination, one cannot infer from Mr. Henderson's statement that Ms. Bradley's conduct was racially motivated.

Because Mr. Brown's allegations fail to establish a constitutional violation with respect to his equal protection claim against Ms. Bradley, the Court need not inquire as to whether her conduct violated clearly established law.

### b.    Cox

Mr. Brown's allegations also fail to show that Mr. Cox violated the Equal Protection Clause. Again, Mr. Brown fails to allege similarly situated comparators showing that Mr. Cox's conduct had a discriminatory effect. When conclusory allegations of selective enforcement are set aside, Mr. Cox's only involvement with Mr. Brown's nuisance case appears to have occurred after the abatement was completed. According to a letter from Mr. Cox to Mr. Brown, which Brown attaches to his complaint, Mr. Cox reviewed the City's abatement action at Mr. Brown's request. (Doc. 51 at 17–18). Mr. Cox's review showed that Mr. Brown was given notice of the nuisance and had a month and a half to clean up the yard before a private contractor was hired to do it for him. As a result, Cox said, the abatement was warranted. (*Id.* at 18).

Under these circumstances, a similarly situated comparator is not a white person whom Mr. Cox could have cited for a nuisance but did not, it is a white person (or any non-black resident) whose citation Mr. Cox overturned even though the citation was appropriate. Because Mr. Brown alleges no such comparator, he has not satisfied the discriminatory-effect element.

Finally, even if Mr. Brown's allegations showed that Mr. Cox treated him differently than similarly situated non-black residents, Mr. Brown's allegations show no discriminatory purpose. He offers no allegations showing that Mr. Cox personally harbored racial bias, and his claim that Mr. Cox was motivated by the City's policy of discrimination fails for the reasons explained above. Because Mr. Brown's allegations against Mr. Cox show neither a discriminatory effect nor a discriminatory purpose, Mr. Brown has not stated a plausible equal protection claim against him.

### 2.    Municipal liability

Mr. Brown's complaint fails to state a plausible equal protection claim against the City. Municipal liability under 42 U.S.C. § 1983 requires three elements: (1) the existence of an official

policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury; and (3) a showing that the defendant established the policy with deliberate indifference to an almost inevitable constitutional injury. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769-70 (10th Cir. 2013).

Here, Mr. Brown fails to satisfy even the first requirement. His allegations relevant to the existence of a municipal policy fall into one of three categories: statements that the City discriminates against black residents in general; allegations that Brown personally knows of white-owned properties that violate the nuisance ordinance but go uncited; and allegations regarding Councilman Henderson's statements regarding the City's treatment of residents on the north side. None of these allegations establishes the existence of a discriminatory policy.

Many of Mr. Brown's allegations regarding the existence of a policy amount to little more than bald assertions that the City has long discriminated against its black residents. The following passage provides a representative example:

> The City of Tulsa has a long standing unwritten policy which is implemented by its employees and agents of discrimination and retaliation against African American citizens of said City. Said policy and custom of discrimination against those of African-American descent has existed since the infamous [Race Massacre] in the City of Tulsa in the 1920s, and [the policy] continues to exist to this date, including intentional and covert actions of discrimination against African-American [sic] including those members of the Police Department of said City.

(Doc. 51 at 6). Such claims are far too general and conclusory to be considered for the purposes of evaluating whether Mr. Brown has properly stated a municipal liability claim. When such conclusory allegations are set aside, all that remains of Mr. Brown's allegations regarding the City's discriminatory policy are his personal observations regarding nuisances on white-owned property and the comments of Councilman Henderson.

Mr. Brown's allegation that he has photos of nuisances on white-owned property are insufficient to show a policy of discrimination. Even if his allegations are taken as true, the City's

failure to cite an unstated number of white owned properties is not evidence of a discriminatory policy. The failure may be the result of insufficient staffing, mere negligence, or property conditions considered to be less severe nuisances. When allegations "encompass a wide swath of conduct, much of it innocent" the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotation marks omitted).

Mr. Henderson's alleged statements are similarly overbroad. As explained above, a policy that targets a predominantly black neighborhood is not equivalent to a policy that targets black individuals. Without more, his statements do no more than show that the City's policy has a discriminatory effect on black residents living on the north side.

Thus, because Mr. Brown's allegations fail to show that the City has a racially discriminatory policy, he has not stated a plausible equal protection claim against the City.

### D.    Count Four: Conspiracy

The allegations in Count Four are directed to all the City Defendants. In it, Mr. Brown claims that Ms. Bradley "conspire[d] with members of the Tulsa Police Dept., defendant Cox, and all other members of the Tulsa City Council to violate Plaintiff's constitutional rights alleged above." (Doc. 51 at 11–12). His allegations, however, fail to show the elements of a conspiracy.

A conspiracy may form the basis of a § 1983 claim, but the plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Id.* Mr. Brown's complaint offers no allegations that the defendants communicated with each other regarding his nuisance case, let alone that they agreed to act in concert in order to deprive him of his constitutional rights. Accordingly, his allegations fail to state a claim for conspiracy.

## VI.    CONCLUSION

For the reasons explained above, the Court finds and orders as follows:

1.    The Court **grants** the defendants' motions to dismiss.

2.    Mr. Brown's claims are **dismissed without prejudice,** but the Court declines to grant Mr. Brown leave to further amend his complaint. To do so would be futile. His substantive due process claim has no foundation in the law, and the facts alleged in support of his procedural due process claim show that the requirements of due process were met. With respect his remaining claims, nothing in his filings to date suggests that he can, in good faith, allege the facts necessary to fill the gaps in his pleading without substantially altering his theories of recovery. Moreover, Mr. Brown has already been given an opportunity to amend his complaint once, but he failed to address any of the defects that the defendants pointed out to him. The Court has no reason to believe he would do otherwise in response to this order.

SO ORDERED this 1st day of June, 2020.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT